**SHELL OFFSHORE, INC.,
et al., Plaintiffs,**

v.

**HEEREMAC, et al., Defendants.**

**No. CIV. A. H-98-1890.**

United States District Court,
S.D. Texas,
Houston Division.

Jan. 25, 1999.

Tom Hutcheson, Houston, TX, for Plaintiffs.

Jacks C. Nickens, Houston, TX, for Defendant Heerema entities and Dockwise entities.

Innes MacKillop, Houston, TX, for Defendant McDermott entities.

Kathy Patrick, Houston, TX, for Defendant Saipem entities.

Opinion on Related Litigation

HUGHES, District Judge.

1. *Introduction.*

A group of oil companies that hire the use of heavy-lift offshore barges sued the companies that own those barges. The oil companies say that the barge owners have been allocating the market among themselves in violation of laws to ensure free competition. Additional companies have joined the original complainants; there are now over thirty parties plaintiff and four clusters of parties defendant. The parties include companies organized and operated in countries on nearly every continent. The transactions among them have been global; the markets are generally the North Sea, Gulf of Mexico, South China Sea, and Gulf of Guinea.

After this action on the substance of the complaint had been pending about six months, one cluster of defendants brought a distinct action in England against some of the plaintiffs. These defendants had appeared here specially for six weeks and had recently been formally summoned. In the English action, they seek to compel some of the oil companies not to try their antitrust claims in Houston because the contracts between them for the barge hire specify London for claims arising from the contracts.

Rather than plead the contract as a ground that the Houston court should abate its case in favor of a London court, the defendants have brought a separate action in London. Both English and American law require that procedural questions, like jurisdiction and venue, be first addressed by the court where the action is first brought.

Although the parties initiating the English action are only one-quarter of the defendants in the American action, some of the other defendants in this action have expressed an interest in being unrestrained in their opportunity to initiate other suits of their own. The Houston plaintiffs' remedy—at this juncture—is this court's judgment that it is wrong for these defendants to bring another

case just to select a forum for a future claim by the Houston plaintiffs. Saipem does not bring its own claim on the transaction being litigated here; it only wants to force the venue question by its London action.

### 2. *Procedure.*

In mid-December of 1998, a score of new plaintiffs joined this six-month old action against McDermott of the United States, Heerema of Switzerland, and Dockwise of Belgium. Along with the original complainants they added a new group of companies to the parties defendant—the Saipem companies—an Italian holding company and five subsidiaries operating around the world. Saipem appeared by counsel at that hearing and insisted on formal service for reasons of Italian domestic law. Also, Saipem indicated that it would have objections to jurisdiction in Houston.

With summons for Saipem issued in Houston on December 28, it brought an action on January 14 in London to force some of the oil companies to bring their antitrust claims in London. Saipem says that these claims arise out of barge contracts that agree to a London forum. The oil companies that are London defendants, who have not yet been summoned, have applied here for a temporary injunction to stop Saipem from pressing its London action. Saipem has represented to this court that it will not seek extraordinary relief from London without notice.

### 3. *Substance.*

In London, Saipem seeks only to compel its Houston adversaries to bring their claims to London. It does not assert its own claim except to the place of the litigation. In effect, on being made a party defendant in Houston, Saipem has filed a declaratory judgment action in London on the issue of venue. To describe it is to answer it.

 Under English and American law, defensive pleas do not support an independent action except on extraordinary facts. Saipem has only pleaded the fact of the contract and the conclusion of oppression. In both countries applications for injunctions against parallel litigation must be supported by facts that compel the conclusion that the

other proceeding is useless, vexatious, or otherwise abusive. *See Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624 (5 th Cir.1996); *Williams & Glyn's Bank, Ltd. v. Chase Manhattan Bank,* 1979 W No. 2327 (Ch.1980).

Saipem does not want to litigate its claim in London; it only wants not to litigate Shell's claims in Houston. There is no parallel substantive case, neither is the London action an attempt by Saipem to help itself in the Houston case by using the London court to conduct discovery or seizure. It can be said to be ancillary only in that it is an independent case to raise a dilatory plea that should—at least first—be presented in Houston.

### 4. *Locality.*

Saipem has characterized its London action as a dispute in an English court between English parties on an English contract about work in the English North Sea. It is not. Saipem did not limit itself to suing through its British subsidiary but it included both its Italian parent and its global subsidiaries— Brunei, Holland, Malaysia, and Portugal. Even had the London action been brought only in the name of Saipem U.K., the defendants in London include oil companies other than those specific to Britain. Without deciding the effect of the prorogation clauses, the transaction described in the Houston complaint is not local as it applies to the role of the British companies.

### 5. *Whole.*

Beyond compounding this dispute into two cases, Saipem's action is a partial jurisdictional defense to this suit, but only against some of the parties plaintiff. Saipem does not have a contractual venue claim against those victims of the market allocation with whom it had no contract. Of the over thirty companies asserting that Saipem has inflicted competitive injury, Saipem apparently has a prorogation clause with only some of them. Allowing the second suit to proceed would both multiply and divide the case.

### 6. *Imminence & Prudence.*

Before an injunction should issue, the harm that may be occasioned by the expect-

ed act of the other party must be both imminent and irreparable. While the London action exists, it is more like another shoe that may be dropped rather than a crippling blow about to be struck—in its present status. Should its quiet potential change to an active menace, this court can then fashion a remedy that is narrow and particular to the actual form of the problem at that time.

### 7. *Irreparability & Money.*

The harm that may attend Saipem's excessively clever tactic is likely to be compensable by an award of money. Alternatively, it may be sanctioned in its defense of this action, and last, if it should appear that neither of those will be adequate, an injunction may issue.

### 8. *Comity.*

The London action implicates no interest of England as a nation. It is a dispute between multinational companies about their claims under an American statutory scheme; the statutes against trade-blocking combinations are in the public interest generally of course, but this is a private law case. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir.1996)(private parties). An Italian conglomerate is not a surrogate for the British Crown. *Cf. Laker Airways, Ltd. v. Sabena, Belgian World Airlines (Laker Airways I)*, 731 F.2d 909 (D.C.Cir.1984)(Crown prosecution). Nothing in this suit puts England and America at odds as sovereigns in the community of nations, and nothing puts the United States District Court for the Southern District of Texas at cross purposes with the Queen's Bench; this is a problem of judicial economy and procedural efficiency rather than an occasion for deference between nations. As it was said in England:

> I do not, in fact, think that it really advances the matter in the present case to talk of interfering in other jurisdictions.... It is, in the end, a question of finding a sensible resolution of a practical problem.

*Williams & Glyn's Bank v. Chase Manhattan Bank*, 1979 W No. 2327 (Ch.1980)(Fox, J.).

The substance of the dispute is not particular to the domestic order of England as a land title case might be, for instance; the cause of action is transitory not local.

### 9. *Conclusion.*

While the distinct action in London is adjudged to be an unjustified, disingenuous complicating maneuver, an injunction is not *now* needed. If jurisdiction here has been decided against Saipem and if it persists in London and if the Queen's Bench does not stay its case, then Shell's remedy for Saipem's useless play can be reexamined.